IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIE HARTEY, ET AL. | : | |
| | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 04-CV-5111 |
| | : | |
| ETHICON, INC. | : | |

**SURRICK, J.**                                                                 **MARCH 20, 2006**

**MEMORANDUM & ORDER**

Presently before the Court, is Defendant's Motion For Summary Judgment (Doc. No. 21). For the following reasons, we will grant Defendant's Motion.

**I.     BACKGROUND**

In December 1999, Plaintiff Marie Hartey suffered from urinary incontinence and difficulty with bowel movements.  On or about December 20, 1999, Hartey underwent extensive reconstructive surgery performed by Marvin Grody, M.D., at Temple University Hospital. Mersilene mesh, a medical device manufactured and distributed by Defendant Ethicon, Inc. ("Ethicon"), was used during the surgery.  (First Am. Compl., Doc. No. 16 ¶ 7.)  In the months following the surgery, Hartey suffered several complications, including numerous bladder and urinary tract infections and increased bladder incontinence.  On June 20, 2000, Hartey underwent additional surgery, at which time massive scarring and an injury to her ureter were discovered. (*Id.* ¶¶ 8-10.)  Hartey learned that the scarring was secondary to the use of Mersilene mesh.  She has continued medical treatment for her problems.  (*Id.* ¶¶ 11-12.)

On March 1, 2002, Hartey and her husband, Earle Harris, filed a complaint with the Court of Common Pleas for Philadelphia County, alleging negligence on the part of Dr. Grody, Temple

University Hospital, and two other defendant doctors ("Grody Litigation"). *See Hartey v. Grody*, No. 011202612 (Pa. Ct. of Com. Pl. filed Dec. 18, 2001). That case settled in January 2004. On September 28, 2004, Hartey and her husband initiated an action in the Court of Common Pleas for Philadelphia County against Ethicon and Johnson & Johnson Inc. Defendants removed that action to this Court. The claims against Johnson & Johnson Inc. were subsequently dismissed. (Doc. No. 8.) In their First Amended Complaint ("Complaint"), Plaintiffs allege that Ethicon was negligent in the design and manufacture of Mersilene mesh, and that Ethicon breached an express warranty regarding the safety of the mesh. (Doc. No. 16.)

Defendant Ethicon has moved for summary judgment, claiming that Plaintiffs' claims are barred by the applicable statutes of limitations.

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of demonstrating that there are no facts supporting the nonmoving party's legal position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (explaining that the nonmoving party

"must do more than simply show that there is some metaphysical doubt as to the material facts"). "The nonmoving party . . . 'cannot rely merely upon bare assertions, conclusory allegations or suspicion' to support its claim." *Townes v. City of Phila.*, Civ. A. No. 00-CV-138, 2001 U.S. Dist. LEXIS 6056, at *4 (E.D. Pa. May 11, 2001) (quoting *Fireman's Ins. Co. v. DeFresne*, 676 F.2d 965, 969 (3d Cir. 1982)). Rather, the party opposing summary judgment must go beyond the pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. When deciding a motion for summary judgment, the court must view facts and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995). However, we will not resolve factual disputes or make credibility determinations. *Siegel Transfer, Inc.*, 54 F.3d at 1127.

### III.  LEGAL ANALYSIS

#### A.  Negligence Claim

In Pennsylvania, "an action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another" must be commenced within two years.[1]  42 Pa. Cons. Stat. § 5524(2). "[L]imitations periods are computed from the time that the cause of action accrued." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (citing 42 Pa. Cons. Stat. § 5502(a)). "[A] cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion." *Id.*  In a personal injury suit, the right to sue arises when the injury is inflicted. *Id.*  The purpose of the statute of

---

[1] In a diversity case such as this, the district court must determine which state's substantive law will govern. We agree with the parties that the substantive law of Pennsylvania governs this case.

3

limitations is to ensure that "the passage of time does not damage the defendant's ability to adequately defend against claims made." *Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997).

The discovery rule provides an exception that tolls the running of the limitations period. *Fine*, 870 A.2d at 858. "The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." *Dalrymple*, 701 A.2d at 167. The Supreme Court of Pennsylvania has emphasized that the discovery rule "is an equitable one," and excludes that period of time "during which the injured party is *reasonably unaware* that an injury has been sustained so that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury." *Id.* The rule "arises from the *inability* of the injured, *despite the exercise of due diligence*, to know of the injury or its cause." *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983). "The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence." *Dalrymple*, 701 A.2d at 167.

The Supreme Court of Pennsylvania has defined the reasonable diligence required under the discovery rule, noting that it is not an absolute standard, "but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." *Fine*, 870 A.2d at 858. The Court further observed:

> There are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence. Put another way, the question in any given case is not, what did the plaintiff know of the injury done him? But, what might he have known, by the use of the means of information

> within his reach, with the vigilance the law requires of him? . . . Under [the objective reasonable diligence] test, a party's actions are evaluated to determine whether he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others.

*Id.* (internal citations omitted).  Ordinarily, the question of whether the plaintiff has exercised reasonable diligence is a factual determination for the jury to decide.  *Id*.  "Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law."  *Id.* at 858-59.

This action against Ethicon is a products liability suit, in which Plaintiffs argue that Ethicon's negligence in the design and manufacture of Mersilene mesh caused Hartey to suffer "severe and permanent injuries," including injury to her ureter and other internal organs.  (Doc. No. 16 ¶¶ 13, 18.)  In support of its Motion, Ethicon contends that Hartey attributed at least some of her injuries to the use of Mersilene mesh in her state court complaint in the Grody Litigation filed on March 1, 2002.[2]  In that complaint, Plaintiffs state that in June 2000, Hartey learned that massive scar tissue had formed and there was injury to her ureter.  She subsequently learned that this scarring was secondary to the use of Mersilene mesh.  (Doc. No. 21 at Ex. A ¶¶ 30-31.)  Ethicon takes the position that, at the very latest, the limitations period expired on March 1, 2004, two years after the date on which Plaintiffs filed the complaint in the Grody Litigation.

---

[2] We note that despite the fact that the Grody Litigation evidently proceeded to the discovery and summary judgment stages before finally being settled, the parties have provided us with little indication of what the record in that proceeding revealed regarding Hartey's knowledge about her alleged injuries from the Mersilene mesh, other than what was alleged in the Grody Litigation complaint.

Plaintiffs respond that Defendant "misunderstands" the allegations in the Grody Litigation complaint.  Plaintiffs contend that scarring is not identified in that complaint as an injury, and that scarring is in fact "an understood and accepted consequence of placing a foreign substance such as Mersilene mesh inside one's body, and the inevitable scarring serves a beneficial purpose in allowing the mesh to properly attach to the natural tissue in the body."  (Doc. No. 24 at 3.)  While this is a creative argument, it is not consistent with the pleadings in the Grody Litigation.  Paragraph 31 of the Grody Litigation complaint states in full:  "Following the [June 20, 2000] surgery [for an enlarged kidney], plaintiff Marie Hartey was advised that a stitch had been placed in her ureter and that *massive scar tissue had formed*.  Later still, plaintiff learned that the scarring was secondary to the use of Mersilene mesh."  (Doc. No. 21 at Ex. A ¶ 31) (emphasis added).[3]  Paragraph 63 of the Grody Litigation complaint states:  "Prior to the procedure of December 20, 1999, defendant Grody failed to advise plaintiff of the potential risks and complications associated with that procedure, particularly with respect to the installation of foreign material/bodies such as Mersilene mesh . . . ."  (*Id.* ¶ 63.)  It is evident from the pleadings that neither Hartey nor her doctors considered the "massive scar tissue" that was caused by the Mersilene mesh to be serving a beneficial purpose.  It is undeniable that as of March 1, 2002, Plaintiff knew that massive scarring was a risk or complication of the use of Mersilene mesh and that Dr. Grody had used Mersilene mesh in the 1999 surgery.  She knew that she was required to undergo an additional surgical procedure in 2000 because of complications resulting from that surgery.  She also knew that she was continuing to have problems which required "continuing

---

[3] The identical statements are made in Plaintiffs' amended Complaint filed against Ethicon.  (Doc. No. 16 ¶¶ 10-11.)

medical treatment" and which caused her to "endure excruciating pain."  This was sufficient to "awaken inquiry and direct diligence in the channel in which it would be successful," *see Fine*, 870 A.2d at 858, and to thus trigger the start of the limitations period.

      Plaintiffs also argue that the Mersilene mesh has caused a new injury, separate and distinct from the injuries caused by the doctors' negligence, thus tolling the statute of limitations.  In their Response to the Motion for Summary Judgment, Plaintiffs allege that a cystoscopy performed in August 2003 revealed the presence of lesions within Plaintiff's bladder, which Plaintiffs believe were caused by the Mersilene mesh which had migrated from the original implantation site to her bladder.  (Doc. No. 22 at 4.)  Plaintiffs offer the affidavit of Marie Hartey in support of this argument.  In that affidavit Hartey claims that she learned, after the August 2003 cystoscopy and a subsequent operation, that "the lesions were caused due to the migration of the Mersilene mesh from the implantation sight [sic]."  (Doc. No. 22. at Ex. B.)

      A brief review of the caselaw persuades us that the alleged migration of the Mersilene mesh is not a new injury for purposes of tolling the statute of limitations.  The case of *Shadle v. Pearce*, 430 A.2d 683 (Pa. Super. Ct. 1981), is illustrative.  In *Shadle*, the plaintiff had been diagnosed with bacterial endocarditis and consequently underwent an aortic valve transplant.  The plaintiff learned at the time of the transplant that his condition had resulted from the negligence of his dentist in failing to properly treat the plaintiff's abscessed tooth.  *Id.* at 684.  Three years after the transplant surgery, the plaintiff developed an aortic aneurysm secondary to the valve transplant.  The defendant dentist in *Shadle* argued that the statute of limitations began to run at the time of the transplant surgery, while the plaintiff maintained that the aneurysm was a new injury, separate and distinct from the aortic valve problems.  *Id.* at 685.  The Superior Court

7

of Pennsylvania held that the statute of limitations began to run at the time of the transplant surgery. The court reasoned:

> If we were to hold otherwise under the facts presented here, we would create a concept in the law which would permit an injured plaintiff to have a new limitations period commence for the initiation of an action for personal injuries as of the date when each complication or change in condition arose, despite the fact that no "new" negligence has occurred which is attributable to the defendant.

*Id.* at 685-86.

Similarly in *Caldwell v. A.H. Robbins Company*, 577 F. Supp. 796 (W.D. Pa. 1984), the plaintiff was diagnosed with pelvic inflammatory disease (PID) in December 1977 and was hospitalized. In January 1978, the plaintiff was advised that the PID was related to the presence of a Dalkon Shield intra-uterine device (IUD) and the IUD was removed. On July 13, 1983, the plaintiff filed a complaint alleging that in 1982 she suffered early onset menopause, and required a hysterectomy with attendant procedures as a result of the IUD. The defendant manufacturer raised the statute of limitations as a defense and the plaintiff responded that she was not aware of these new problems until 1982. The court held that the plaintiff was "not entitled to a new limitations period to begin with the appearance of each new surgery or complication." *Caldwell*, 577 F. Supp. at 797. The court noted that "[t]he limitations period begins to run when damage is inflicted which is 'physically objective and ascertainable.'" *Id.* (quoting *Ragan v. Steen*, 331 A.2d 724 (Pa. Super. Ct. 1974)). The court also concluded that the plaintiff had not suffered from a separate and distinct injury because her injuries were "sufficiently similar," and thus tolling the limitations period was not justified. *Id.* at 798 n.1.

Hartey states in her Complaint that after her surgery in December 1999, her doctors discovered that her bladder was injured on account of the surgery, specifically, the placement of a

stitch in her ureter and the insertion of Mersilene mesh. Hartey was aware that massive scarring was attributable to the Mersilene mesh in the area of her bladder as early as March 2002. The lesions, which were observed as a result of the August 2003 hysterectomy, are simply an extension of the complication that was observed in 2000. They do not constitute a separate and distinct injury. Plaintiff's knowledge of the complications from the Mersilene mesh triggered the running of the statute of limitations, which thus expired in March 2004, well before Plaintiffs filed the instant Complaint against Ethicon.

Construing the facts in the record before us in a light most favorable to Plaintiffs, we conclude that the lesions allegedly caused by the migration of the Mersilene mesh and allegedly discovered in August 2003 by Hartey are not, for purposes of the discovery rule, a new and separate injury, distinct from the scarring caused by the Mersilene mesh that Hartey was aware of in 2002. Accordingly, we will grant Defendant Ethicon's Motion for summary judgment with respect to Plaintiffs' claim for negligence.

### B. Breach of Warranty Claim

Ethicon also argues that Plaintiffs' breach of warranty claim is barred by the statute of limitations.[4] In the Complaint, Plaintiffs contend that Ethicon expressly warranted that the Mersilene mesh "was safe and suitable for use as a substitute for human tissue in certain types of reconstructive surgery" and that the mesh failed to conform to these warranties. (Doc. No. 16 ¶¶ 22-24.)

---

[4] Plaintiff's Response To The Motion For Summary Judgment Of Defendant Ethicon, Inc. (Doc. No. 22) and Plaintiff's Response To Defendant's Motion For Leave To File A Reply Brief In Support Of Defendant's Motion For Summary Judgment (Doc. No. 24) do not even mention the express warranty claim.

The statute of limitations for breach of warranty claims is four years, and this period is applicable to breach of warranty claims for personal injury. 13 Pa. Cons. Stat. §§ 2725, 5525(2); *Williams v. W. Penn Power Co.*, 467 A.2d 811, 814 (Pa. 1983); *Pitts v. N. Telecom, Inc.*, 24 F. Supp. 2d 437, 443 (E.D. Pa. 1998). Although Plaintiffs' Complaint appears to set out an express warranty claim, we see no basis for such a claim. Nowhere in this record is there an indication that Ethicon made express warranties to Hartey's doctors or to Hartey, nor is there any indication of what these express warranties might be.

In any event, whether Plaintiffs make a claim for breach of an express warranty or breach of implied warranties of merchantability or fitness for a particular purpose, these claims must fail because the statute of limitations has run on these claims. "Warranty claims accrue on the date that the seller tenders delivery of the goods." *Pitts*, 24 F. Supp. 2d at 443. This is true "even if the alleged breach is not apparent until after delivery has been tendered." *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 888 n.2 (E.D. Pa. 1996) (citing *Nationwide Ins. Co. v. Gen. Motors Corp.*, 624 A.2d 1172, 1174 (Pa. 1993)). Thus, Plaintiffs' warranty claim accrued when the Mersilene mesh was used in Hartey's operation on December 20, 1999. Moreover, the discovery rule does not apply in warranty actions except in certain unique circumstances which the parties have not raised or discussed here. *Pitts*, 24 F. Supp. 2d at 443 (citing *Northampton County Area Cmty. Coll. v. Dow Chem., U.S.A.*, 566 A.2d 591, 599 (Pa. Super. Ct. 1989)); *see also O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 711 (3d Cir. 1981). Because Plaintiffs' claim of breach of warranty should have been filed no later than December 20, 2003, we conclude that this present claim is barred by the statute of limitations.

### C.     Loss of Consortium

Plaintiff Harris claims a loss of consortium.  "Under Pennsylvania law, a spouse's right to recover for loss of consortium derives only from the other spouse's right to recover in tort." *Danas v. Chapman Ford Sales, Inc.*, 120 F. Supp. 2d 478, 489 (E.D. Pa. 2000); *see also Little v. Jarvis*, 280 A.2d 617, 620 (Pa. Super. Ct. 1971).  Because we have concluded that Hartey's claims are barred by the statute of limitations, Harris's claim for loss of consortium will be dismissed.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIE HARTEY, ET AL. | : | |
| | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 04-CV-5111 |
| | : | |
| ETHICON, INC. | : | |

**ORDER**

AND NOW, this 20th day of March, 2006, upon consideration of Defendant's Motion For Summary Judgment (Doc. No. 21), it is ORDERED that the Motion is GRANTED, and judgment is entered in favor of Defendant Ethicon, Inc., and against Plaintiffs Marie Hartey and Earle Harris.

IT IS SO ORDERED.

BY THE COURT:

S/ R. Barclay Surrick
_____
R. Barclay Surrick, Judge